UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PROJECT TRAVEL, LLC**,

    Plaintiff,

v.                                       Case No. 8:24-cv-2817-WFJ-LSG

**JASON ROWE**,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Jason Rowe's motion to dismiss Plaintiff Project Travel's complaint for lack of personal jurisdiction, Dkt. 32. Plaintiff has responded, Dkt. 35, and Defendant has replied, Dkt. 38. Upon careful consideration of the parties' filings, Defendant's motion is denied.

## BACKGROUND

The complaint alleges that Project Travel previously employed Mr. Rowe, who went to work for competitor company Terra Dotta in October 2024. Dkt. 1 ¶¶ 28, 29. He allegedly took with him "some of Project Travel's most confidential and sensitive information" in an apparent attempt to benefit Terra Dotta and himself. *Id.* ¶¶ 35, 38. Project Travel brings four claims against Mr. Rowe: breach of contract, misappropriation of trade secrets under both the Florida Uniform Trade Secrets Act and the Defend Trade Secrets Act, and breach of fiduciary duty. *Id.* ¶¶ 47–75.

1

The parties contest whether the facts underlying this lawsuit support the Court's exercise of personal jurisdiction over Defendant. Mr. Rowe "at all material times" resided in either Massachusetts or Spain, where he worked remotely for Project Travel. Dkt. 32 at 3 (citing Declaration of Jason Rowe, Dkt. 32 at 25–28). Mr. Rowe contends that he never traveled to Florida for business. *Id.* He worked as a Product Manager developing Plaintiff's software, and "did not specialize in any products, services, or clients based in Florida." *Id.* He reported to the Vice President of Experience, who lived in Florida, mostly electronically using Slack and Google. *Id.*; Dkt. 35 at 3 ¶ 9.

For its part, Project Travel employs a largely remote workforce, but contends it is headquartered in Florida. Dkt. 35 at 2 ¶ 2 (citing Declaration of Project Travel CEO David Saben, Dkt. 35-1). Indeed, its principal, and allegedly only, physical place of business is in Florida. *Id.* at 2 ¶¶ 1–4. Project Travel uses this office space for "high-level meetings," such as those of the senior leadership team. *Id.* at 2 ¶ 5. The company's CEO, Vice President of Experience, and product team members all live in Florida. *Id.* at 3 ¶¶ 7–11. However, the Florida Department of State's Division of Corporations seemingly had not authorized Plaintiff, a Delaware LLC, to do business in Florida at the time of Defendant's employment. Dkt. 32 at 2. And the pay stubs Defendant received reflected a Michigan address for Project Travel. *Id.* at 3.

Also pertinent to this motion to dismiss is Project Travel's "Employee Proprietary Information and Inventions Assignment Agreement" ("PIIA Agreement"). Dkt. 1-2 at 1–7. Paragraph 8.1 therein provides that Jason Rowe "expressly consent[ed] to the personal jurisdiction and venue in the state and federal courts for the county in which Company's principal place of business is located[.]" *Id.* at 5. In the same paragraph, the PIIA Agreement provides that Colorado law governs it. *Id.* Mr. Rowe executed the PIIA Agreement in Massachusetts, and Trevor Stiegelmar, on behalf of Project Travel, countersigned in Michigan. Dkt. 32 at 4.

## LEGAL STANDARD

A Florida court may exercise personal jurisdiction over a nonresident defendant if two requirements are met. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). First, the complaint must allege "sufficient jurisdictional facts to bring the action within the ambit of [Florida's long arm statute, section 48.193]." *Venetian Salami*, 554 So. 2d at 502 (citation omitted). Second, sufficient minimum contacts must exist to satisfy the due process requirements of the Constitution. *Id.*

A defendant contesting personal jurisdiction must file an affidavit supporting its position. *Id.* Then, a plaintiff may respond by submitting its own affidavits establishing the basis for jurisdiction. *Id.* "In most cases, the affidavits can be harmonized[.]" *Id.* at 502–03. To the extent there is discord, courts accept as true a

plaintiff's uncontradicted allegations in the complaint, and reject statements in affidavits that are legal conclusions rather than factual declarations. *Posner*, 178 F.3d at 1215. Where the plaintiff's and defendant's evidence still conflicts, "the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citation omitted).

## DISCUSSION

Mr. Rowe argues, in pertinent part, that Florida's long arm statute does not reach him because none of the allegations in the complaint indicate that tortious conduct occurred in Florida, or that it affected Florida customers or Plaintiff's business in Florida. Dkt. 32 at 8. Mr. Rowe argues that even if Plaintiff had alleged injury in Florida, that alone is insufficient to support jurisdiction when the nonresident defendant committed the tort elsewhere. *Id.* at 9. With regard to the forum selection clause, Mr. Rowe argues that it cannot confer jurisdiction on its own under Florida law. *Id.* at 14. Even if it could, the clause is unenforceable on its face because it is too vague, and does not actually put the parties on notice of where they may proceed in litigation. *Id.* And absent the forum selection clause, Mr. Rowe lacks sufficient minimum contacts with Florida to justify jurisdiction. *Id.* at 16–22.

Project Travel responds that, under the Eleventh Circuit's broad interpretation of Florida Statutes section 48.193(1)(a)(2), "courts routinely find that

misappropriating trade secrets from Florida-based companies confers specific personal jurisdiction to Florida courts under the Florida Long Arm Statute." Dkt. 35 at 7–8. Regarding the forum selection clause, Project Travel argues that it is a "floating" forum selection clause that is legally enforceable because it does identify the appropriate forum, just not expressly by name. *Id.* at 13. Forum selection clauses may become unenforceable when they leave one party unilateral discretion to choose the forum, which is not the case here. *Id.* And in light of Mr. Rowe's contractual consent to forum, due process is satisfied. *Id.* at 10.

## I.   Florida's Long Arm Statute

Plaintiff alleges, in part, that "[t]his Court has personal jurisdiction over Rowe because he directed his actions to the state of Florida, and the harm from Rowe's misconduct was felt in Florida." Dkt. 1 ¶ 12. Defendant's motion to dismiss addresses multiple subsections of Florida's long arm statute because "Plaintiff did not allege which provision of section 48.193 applies." Dkt 32 at 6. Plaintiff's response, Dkt. 35 at 6, clarifies that Plaintiff is traveling under subsection two, which provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . .
> 2. Committing a tortious act within this state.

5

Fla. Stat. § 48.193(1)(a)(2).

The parties, and courts, are divided on whether injury within Florida resulting from tortious conduct committed elsewhere is sufficient to confer jurisdiction over a nonresident defendant. Mr. Rowe contends that "federal courts must construe a state's long-arm statute as would the state's supreme court," and that the "Florida Supreme Court has expressly held that a non-resident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of a Florida court simply because he or she is a corporate officer or employee." Dkt. 32 at 7–8 (first citing *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1366 (S.D. Fla. 1999); and then citing *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012)).

In *Kitroser*, however, the Florida Supreme Court answered a different question than the one now before the Court. The issue was whether the corporate shield doctrine barred a court's exercise of personal jurisdiction over a nonresident defendant when the defendant committed negligent acts in Florida on behalf of his employer. *Kitroser*, 85 So. 3d 1084. The Court answered in the negative. *Id.* at 1090. In *Kitroser*, the personal representative of a decedent's estate alleged that some defendants in the action negligently trained and supervised the truck driver who ultimately killed the decedent in a fatal collision. *Id.* at 1086. Those defendants all resided in Georgia or Texas, but undisputedly committed the alleged negligent

6

training of the truck driver in Florida. *Id.* They attempted to argue that the corporate shield doctrine protected them from suit because they trained the truck driver exclusively in their corporate capacities, and lacked any personal interest in their conduct in Florida. *Id.* at 1087–88. The Court explained that the corporate shield doctrine intends to defend "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida" from the personal jurisdiction of Florida courts simply because they are a company officer or employee. *Id.* at 1089. But the doctrine did not apply to the defendants because the negligent training at issue occurred in Florida. *Id.* at 1090. *Kitroser*, thus, resolved the posed corporate shield question, but does not stand for the broader proposition that Defendant offers. *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Kitroser* for the proposition that the "corporate shield doctrine is inapplicable where the corporate officer commits intentional torts").

    Currently, most Florida courts have found that in-state injury resulting from out-of-state tortious conduct is insufficient to subject the actor to jurisdiction in Florida, but some courts have held the opposite. *Compare, e.g., Consol. Energy Inc. v. Strumor*, 920 So. 2d 829, 832 (Fla. 4th DCA 2006) ("[M]ere injury in Florida resulting from a tort committed elsewhere is insufficient to support personal jurisdiction over a non-resident defendant."), *with Allerton v. State Dep't of Ins.*, 635

7

So. 2d 36, 40 (Fla. 1st DCA 1994) (finding long arm statute satisfied when defendant participated in a scheme, outside of Florida, to conceal Florida-based insurer's financial condition, with injury resulting in Florida). The Eleventh Circuit has considered this divide and announced that it will follow the broader construction of section 48.193(1)(a)(2) unless and until the Florida Supreme Court instructs otherwise. *Posner*, 178 F.3d at 1216; *Mosseri*, 736 F.3d at 1353; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Thus, the Eleventh Circuit counsels that subsection (1)(a)(2) applies "to defendants committing tortious acts outside the state that cause injury in Florida." *Posner*, 178 F.3d at 1217.

Under that standard, federal courts in Florida consistently find that misappropriating trade secrets from Florida-based companies establishes personal jurisdiction over a nonresident defendant. *See, e.g.*, *VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1378–80 (S.D. Fla. 2012); *TSM Tech. Mgmt., Inc. v. Benowitz*, No. 6:14-CV-1061-ORL-41, 2015 WL 1311016, at *3–4 (M.D. Fla. Mar. 24, 2015); *Shores Glob., LLC v. Njord's Ark A/S*, No. 21-CV-20623, 2023 WL 2838078, at *16–17 (S.D. Fla. Feb. 3, 2023), *report and recommendation adopted*, No. 21-20623-CIV, 2023 WL 2642691 (S.D. Fla. Mar. 27, 2023), *order corrected and superseded*, No. 21-20623-CIV, 2023 WL 4972787 (S.D. Fla. Mar. 28, 2023), *and report and recommendation adopted*, No. 21-20623-CIV, 2023 WL 4972787 (S.D. Fla. Mar. 28, 2023); *AutoNation, Inc. v. Hall*, No. 19-60291-CIV, 2019 WL

3712008, at *6–7 (S.D. Fla. May 29, 2019); *Off. Depot, Inc. v. Pelletier*, No. 16-81170-CIV, 2016 WL 10932510, at *3 (S.D. Fla. Sept. 8, 2016).

In light of the growing body of case law finding personal jurisdiction in trade secret misappropriation cases, the Eleventh Circuit's broad interpretation of Florida's long arm statute, and the Plaintiff-deferential standard under which the case is reviewed at this stage, Plaintiff has alleged sufficient facts to satisfy Florida's long arm statute. Project Travel avers that its headquarters and principal place of business is in Venice, Florida. Dkt. 35-1 (Declaration of Project Travel CEO David Saben) ¶¶ 4–7. Mr. Rowe's affidavit states that "[t]o [his] knowledge, Project Travel did not have an office in Florida when [he] worked there." Dkt. 32 at 26 ¶ 12. These two affidavits can be harmonized, *Venetian Salami*, 554 So. 2d at 503, and the result is that Project Travel has a Florida headquarters and principal place of business of which Mr. Rowe was unaware. Nonetheless, accepting Project Travel's complaint and evidence as true, *Meier*, 288 F.3d at 1269, it is a Florida-based company. Because Plaintiff's complaint alleges that Defendant's misappropriation harmed Project Travel, see, *e.g.*, Dkt. 1 ¶¶ 7, 46, 55, 58, 63, 66, Plaintiff has suffered injury in Florida such that Mr. Rowe is subject to the jurisdiction of this Court. *See, e.g.*, *Arroyo*, 868 F. Supp. 2d at 1378–80; *TSM Tech. Mgmt.*, 2015 WL 1311016, at *3–4. Project Travel's affidavit further states that multiple customers reneged on commitments or expressed concerns following Defendant's departure, including

9

"one of Project Travel's largest enterprise clients": Florida-based Embry-Riddle. Dkt. 35-1 ¶¶ 17, 18. In short, Mr. Rowe's alleged misappropriation of trade secrets from a Florida-based company satisfies Florida's long arm statute.

## II.   Due Process and the Forum Selection Clause

Given that jurisdiction is satisfied under Florida Statutes section 48.193(1)(a)(2), the Court now turns to whether exercising jurisdiction is consistent with due process. *E.g.*, *Posner*, 178 F.3d at 1214. This question is answered, affirmatively, by the forum selection clause in the PIIA Agreement. Mr. Rowe agreed:

> I hereby expressly consent to the personal jurisdiction and venue in the state and federal courts for the county in which Company's principal place of business is located for any lawsuit filed there against me by Company arising from or related to this agreement.

Dkt. 1-2 at 5 ¶ 8.1.

Defendant first submits that "Florida law does not permit personal jurisdiction to be conferred by contract." Dkt. 32 at 14 (citing *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540, 544 (Fla. 1987) ("[A] contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in personam jurisdiction over an objecting, non-resident defendant.")). Courts have recognized that since *McRae*, the Florida legislature enacted law permitting parties to confer personal jurisdiction on Florida courts by contract when certain requirements are met. *See Corp. Creations Enters. LLC v. Brian R. Fons Att'y at L. P.C.*, 225 So. 3d 296, 301

(Fla. 4th DCA 2017); Fla. Stat. § 48.193(1)(a)(9) (stating a person submits themselves to the jurisdiction of Florida courts by "[e]ntering into a contract that complies with s. 685.102."). Regardless, here, the forum selection clause in the PIIA Agreement does not serve as the sole basis for asserting personal jurisdiction over Defendant. As discussed above, Florida's long arm statute is satisfied by Defendant's alleged misappropriation of Project Travel's trade secrets. *See Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 919–20 (11th Cir. 1989) (stating that under *McRae*, conferral of personal jurisdiction clauses are not enforced unless an independent ground for personal jurisdiction exists under the Florida long arm statute). Defendant's argument that the forum selection clause cannot serve as the sole basis for jurisdiction is therefore unavailing.

Defendant next argues that the forum selection clause is unenforceable because it provides "no clarity as to where suit could be brought." Dkt. 32 at 14 (first citing *Lopez v. United Cap. Fund, LLC*, 88 So. 3d 421, 426 (Fla. 4th DCA 2012); and then citing *Omega IM Grp., LLC v. Louidar, LLC*, No. 17-22141-CIV, 2018 WL 1069446, at *7 (S.D. Fla. Feb. 16, 2018), *report and recommendation adopted*, No. 17-22141-CIV, 2018 WL 1875835 (S.D. Fla. Mar. 6, 2018)). *Lopez* and *Omega*, however, are distinguishable from the forum selection clause in this case and counsel in Plaintiff's favor.

11

In *Omega*, the forum selection clause stated that the "venue provided for in the Term Sheet shall be at the sole and absolute discretion of Omega's counsel." 2018 WL 1069446, at *7. The court found that clause unenforceable because it failed to provide any predictability as to the forum; Omega's counsel retained the sole discretion to make that choice. *Id*. In *Lopez*, the clause at issue similarly stated in pertinent part: "Each of the parties hereto agrees that any such claim or cause of action shall be tried by a court trial without a jury in seller's county and state of choice." 88 So. 3d at 423. The court likewise ruled that the clause was unenforceable because it left forum selection "to the whim of the defendants' choice," and offered "total uncertainty" about the location where litigation may proceed. *Id.* at 423, 425–26.

*Lopez* distinguished the clause at issue therein from "floating forum selection clause[s] which, unlike the indefinite clauses in this case, tie[] the forum selection to mutable and knowable facts." 88 So. 3d at 421. The court explained that a floating forum selection clause, "rather than designating a forum by immutable geographical place name, designates the exclusive forum for all litigation regarding the agreement which contains the clause by reference to mutable facts, namely, the location of the main office, headquarters, principal office, or principal place of business of one of the parties to the agreement[.]" *Id.* at 425 (citation omitted). The court noted that,

12

unlike the clause before it, floating forum selection clauses are generally enforceable. *Id.*

Here, the PIIA Agreement did not leave forum selection to the random choice of Plaintiff. Project Travel's clause is an enforceable floating forum selection clause that designates the forum by reference to knowable facts, namely where the "Company's principal place of business is located." Dkt. 1-2 at 5 ¶ 8.1; *see Lopez*, 88 So. 3d at 425; *see also Gold Crown Resort Mktg. Inc. v. Phillpotts*, 272 So. 3d 789, 793 (Fla. 5th DCA 2019) (enforcing floating forum selection clause); *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1288–89, 1291, 1294 (11th Cir. 2022) (same).

Because Mr. Rowe consented to suit where Project Travel's principal place of business is located, which Plaintiff avers is Florida, due process is satisfied and further analysis is unnecessary. *Alexander Proudfoot*, 877 F.2d at 921 ("Because the nonresident defendant in the present case contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done." (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985))). That Mr. Rowe did not know, or ask, where Project Travel's principal place of business was at the time he signed the PIIA Agreement is unfortunate, but not dispositive to this analysis. *See Purugganan*, 43 F.4th at 1294–1296 (finding floating forum selection clause enforceable despite defendant's objections that "Alabama was not

13

contemplated as a possible forum" because defendant "knew that the bargained-for forum would depend on the location of the franchisor's principal place of business at the time the action is commenced," and further noting he may be dissatisfied with the forum, but "it is not our task to save him from the consequences of an agreement he freely entered into" (cleaned up)). Accordingly, Defendant is subject to the jurisdiction of this Court.

## CONCLUSION

It is hereby **ORDERED** and **ADJUDGED**: Defendant Jason Rowe's motion to dismiss Plaintiff Project Travel's complaint for lack of personal jurisdiction, Dkt. 32, is **DENIED**. Defendant must file an answer within twenty-one days.

**DONE AND ORDERED** in Tampa, Florida, on March 13, 2025.

>  */s/ William F. Jung*
> **WILLIAM F. JUNG**
> **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record